BUSIGÓ, PLAINTIFF AND APPELLEE, *v.* HEIRS OF DE LA TEXERA, DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Ponce in an Action of Filiation.

No. 3181.—Decided July 26, 1924.

FILIATION—EVIDENCE.—The evidence offered by the plaintiffs showed that they were born in 1909 and 1913, respectively, and sufficiently established their filiation.

The facts are stated in the opinion.

*Messrs. M. Bahamonde* and *L. López de Victoria* for the appellants.

*Mr. G. Rodríguez* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

In representation of her minor children, Julio and Angel, Josefa Busigó brought an action in the District Court of Ponce against Belén de la Texera, the sister and sole heir of Agustín de la Texera, praying for judgment to the effect that the said minors were acknowledged natural children of Agustín de la Texera.

The defendant answered in opposition, alleging that Texera always lived alone in his house and office without having had relations of concubinage with any woman, and that he died at the house of the defendant under the care of his relatives.

The case went to trial. Evidence of both parties was examined and the court finally rendered judgment sustaining the complaint. The defendant appealed therefrom and assigned error as follows:

"The court committed manifest error in finding that the allegations of the complaint were proved.

"The court committed a manifest error of law in holding that the evidence introduced by the plaintiff was such as is required by law and jurisprudence to establish the filiation of a natural child."

The assignments were argued jointly, the appellant in-

voking specially in support of the second the jurisprudence recently laid down by this court in the case of *Medina* v. *Heirs of Bird,* 30 P.R.R. 151, as follows:

"The meaning of concubinage as used in subdivision 3 of section 189 of the Civil Code before it was amended in 1911 is the living together as husband and wife without being married of the alleged father and the mother of the person claiming acknowledgment. It is not concubinage for a man to provide a woman with a house and frequently visit her, especially if he has an independent home of his own, as the evidence in this case tended to show.

"In an action under section 189 of the Civil Code as it read in 1903, alleging that the supposed natural child is the offspring of amorous relations between the plaintiff and the defendant, it is necessary to prove that at the time of conception they had the intention of marrying or were engaged to be married."

We agree with the following statements contained in appellant's brief:

"The question raised involves an action of filiation brought by two natural children, one born on July 14, 1909, and the other on November 29, 1913. The evidence in each case is governed by the law in force at the time of the respective births.

"This being so, with regard to the child born in 1909 the provisions of section 189 of the Civil Code are applicable and with regard to the one born in 1913 those of section 193 as amended by the Act of the Legislative Assembly of 1911.

"As to the first of these children the plaintiff had to prove by clear and strong evidence some one of the following:

"1.—That there was an authentic statement in writing made by Agustín de la Texera expressly recognizing its paternity.

"2.—That publicly or privately he had shown that it was his child, or had called it as such in conversation, or looked after its education and maintenance.

"3.—That the mother was known to have lived in concubinage with the father during the pregnancy or at the birth of the child, or that the child was born while its parents were engaged to be married."

"As to the second of these children, the plaintiff had to prove by clear and strong evidence the following:

"1.—That there was an indubitable statement in writing of Texera wherein he expressly acknowledged his paternity.

"2.—That the child had uninterruptedly enjoyed the condition as natural child of the father justified by acts of the father or of his family.

"3.—That the mother was known to have lived in concubinage with the father during her pregnancy and at the time of the birth of the child, or that they were engaged to be married at the time of its birth.

"4.—The introduction of authentic evidence of the child's paternity."

But we have examined the evidence and in our opinion the facts and the law support the judgment.

After the birth of the minors and the death of Agustín de la Texera had been established by documentary evidence the plaintiff was sworn as the first witness and her testimony covers eighteen pages of the transcript. She was subjected to extensive and able cross-examination, but her testimony was not shaken. She testified that she knew Texera when she was a maiden, after which she married and later became a widow. Three years passed and Texera began to court her. Texera was a dentist and the witness had very bad teeth and he offered to treat them. She went to his office and he pressed his suit and asked her to live with him, saying that he would marry her if she was well behaved. Finally they came to live together under the same roof and he paid the expenses of and was present at the birth of the children born of their union. Texera attended to the education of the children and "wherever he found them he would take them along with him, calling them his children." He had "the idea that sooner or later they would be legitimate, as that was his idea." The witness lived with her mother. Texera contributed to the repairing of the house, bought her furniture and slept there regularly. When he arose in the morning the witness prepared tea for him, as he took no coffee because he always had some stomach trouble. Defendant's attorney insisted in his cross-questions and the witness admitted that Texera had a room in his office with everything necessary and that

he often slept there; that once he became ill and remained in his office where the witness went to care for him, leaving when his sister came. Finally Texera left the witness because he had a quarrel with her mother who insisted that he should marry her. Asked whether she had cared for Texera all of his life, she replied: "Not all of his life until his death, for as I have said we had quarrels. He quarreled with my mother and he would say things about her which I could not tolerate, and I said to him: 'If you do not wish to live here any more, I know how to work; I will work,' and so we remained." Testifying again as to the children the witness, referring to Texera, said: "He promenaded with both, with the eldest and the other one, who was learning to walk . . . . in the latter part of the afternoon. He would sometimes take them to the plaza. He would sit while the children played. . . . . Yes, everybody must have seen him, because the town is small."

Then Juan Belazco was called and testified in part as follows:

"I know that Agustín had two children born of Josefa Busigó and that he lived with her in a house on the east end of Buena Vista Street. Several times I passed the house at night and saw him there, and one night I asked him: What are you doing here? He replied: Nothing particular; I live here with this girl, with whom I have two children, and there was another one that died. . . . . He was inclined to acknowledge them, for he visited a certain family in Yauco and the family called his attention to the acknowledgment of the children and said that he had said that he would acknowledge them."

In answer to the following question: "Does this mean that you know that he lived in concubinage because you passed the house once and saw him there?" he replied: "Not exactly in concubinage; but once Agustín de la Texera fell ill in his office in the center of the town and this woman came to nurse him."

After that he testified that he saw the children in Texe-

ra's office and added: "He caressed them, and called them to his side. Particularly, there was a little boy who had a protruding lower jaw like Texera. That boy died. I used to say to Texera: You see, he is exactly like you."

Amelia Vans testified that she was a midwife and that at the request of Texera, who went in person to engage her, assisted Josefa Busigó at the births of her children. Her testimony is full of details. To the following question: "Did Agustín Texera live in the same house?" she replied: "I always found him there every time that I went there."

Emeterio Collado testified that he knew Texera in Yauco and saw the children in his office and they called him papa. There were three children and one of them died. To the question: "Did you ask him at any time whether these children were acknowledged or not?" he replied: "No, but he once said to me: I will acknowledge them in time because they are my children."

With regard to their living together he testified that Josefa Busigó lived in Buena Vista Street in the house of her mother, and that he often saw Texera in the house when he passed.

Julio Busigó, thirteen years old, was the last witness for the plaintiff. He said that Texera was his father; that he caressed him, bought shoes for him and took him to school; that he was at the time in the fourth grade; that his father died in Ponce in the house of his family; that his mother took him there; that he went into the house where the corpse lay; that it was a large two-story house, and that at half past three in the afternoon the funeral procession started and he followed it to the cemetery.

On behalf of the defendant Emilio Bacó, Luis Quesada, Antonio de Carde, Luis Sotomayor and Alberto de la Texera testified. They were all intimate friends or relatives of Texera. They said that they knew him well and had never known that Texera lived in concubinage with Josefa Busigó; that Texera lived in his room in his office and ate his meals

there or at certain houses; that he never confided to them that he had natural children. Some of this testimony tends to deny the attendance of any child at Texera's funeral.

Such was the evidence offered by the parties to the conscience of the judge. The district judge did not deliver such a clear and precise opinion as he should have delivered, but on the basis of his judgment we must conclude that he gave credit to the witnesses for the plaintiff.

The testimony of the witnesses for the defendant is undoubtedly of weight. They seem to have been serious persons who were telling the truth, but going back to the testimony offered by the plaintiff, especially that of Josefa Busigó, the necessary conclusion is that it is inconceivable that such evidence could be fabricated and the conscience is satisfied of the truth of the relations between Texera and Josefa and the birth, as a result of such relations, of the children, the plaintiffs, and one other that died.

The other question involved, *i. e.,* whether the evidence meets all of the requirements of the statute for establishing the acknowledgment, immediately arises.

In our opinion the concubinage was satisfactorily proved. The fact that Texera had a room in his office where he slept at his convenience and following his custom as a bachelor, does not preclude the conclusion that he lived publicly under the same roof with Josefa Busigó. These were not momentary relations, but a condition which lasted for several years. There was not one child, but three. Texera helped to repair the house in which Josefa lived with her mother and furnished it. He slept there regularly and his neighbors often saw him there, and there he took his breakfast, prepared by his concubine or mistress.

It was also proved that the oldest son was publicly and privately acknowledged by his father, who took him to school and to the public square of the town in which he was born and lived, and did other repeated acts of acknowledgment. And with regard to the youngest child it may

well be held, considering the situation created and maintained for such a long time, that from the time of its birth it enjoyed the status of a natural child and so continued until the death of the father, notwithstanding that the latter lived apart from his concubine during the last months of his life for the reasons which she explained.

The evidence presents Texera as a queer, sick and undetermined man who always avoided complying fully with his duties toward the woman who gave herself to him and toward the children that she bore him, but who by his acts left evidence of the actual state of facts and of his real intentions sufficient to enable a court to supply by its judgment the solemn and valid act which he failed to perform in his lifetime.

The judgment appealed from must be

*Affirmed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.